Good morning, sir. We note that you were appointed under the Criminal Justice Act. That is correct, Judge. And the court wants you to know that we deeply appreciate your willingness to accept the assignment. Thank you, Judge. I appreciate that. And you may want to raise the lectern. There's a button on the left, I guess. Thank you. You may proceed, sir. Thank you, Judge. The sole issue before the court today from the District Court's denial of Mr. Ervin's petition for rid of habeas corpus is whether or not the Missouri State Court of Appeals opinion, direct appeal opinion, was either one, an unreasonable application of clearly established federal law or was contrary to clearly established federal law under 28 U.S.C. 2254 D.1 or whether it was an unreasonable determination of the facts under 2254 D.2. After review of the Missouri Supreme Court, I'm sorry, the Missouri Court of Appeals opinion, it's clear that they did apply the correct established legal precedent, and that would be Doyle v. Ohio. So Mr. Ervin's argument is two, one, that Missouri Supreme Court's opinion was an unreasonable application of Doyle v. Ohio and its progeny, and then two, that it was an unreasonable determination of the facts. Specifically, Missouri Court of Appeals, let me give a little background to the situation, what the claim actually was in the Missouri Court of Appeals. During trial, the state introduced a videotape interrogation of Mr. Ervin. Mr. Ervin at the time was a 16-year-old young man. He was accompanied by his mother to the interview. At the interview, he was being asked questions about his stepbrother, who he had babysitted, his 21-month-old stepbrother, who he had babysitted the day before. Mr. Ervin was read his Miranda rights, and at one point went ahead and waived those Miranda rights and agreed to answer questions from the detective. At one point, after discussing what Mr. Ervin's activities were the day before, he suddenly started to be asked questions by the detective of how the injuries occurred to his stepbrother. And at that point, Mr. Ervin stopped and, well, actually paused. The detective repeated the question again, and at that point, Mr. Ervin said, that's what this whole thing's about. And the detective again, we're trying to find out how the victim was harmed. Mr. Ervin paused again for about 10 seconds, and at that point, he said, I don't want to talk to you anymore. So at trial, the state moved to admit this evidence over the objection of defense counsel. The trial court overruled the objection, and the videotape was submitted to the jury at the conclusion of the case during deliberations. During the case itself, the prosecutor raised the issue of the interview, the videotaped interview on two occasions, an opening argument. The prosecutor stated that, well, specifically had cited or quoted Mr. Ervin's interview to the extent that when asked, when he finally understood what the interview was about, that's what this whole thing's about. Prosecutor pointed that out in the closing argument. He implored the jury to go back and look at the video again during the deliberations. When the Missouri Court of Appeals ruled on that issue, and specifically trial, specifically a counsel brought a direct appeal claim contending that Mr. Ervin's rights under the 14th and Fifth Amendment to self-incrimination had been violated because of this video statement being brought into evidence, Missouri Court of Appeals denied the claim and affirmed Mr. Ervin's conviction and sentence, specifically finding that the statements were given after Mr. Ervin had waived his Miranda rights, after being given his Miranda rights, that he did not, he wasn't confronted with a direct question of guilt or innocence. He wasn't asked, well, did you do this or do you cause this to happen? So the Missouri Court of Appeals found there was no impermissible influence of guilt that happened. And then in their alternative ruling, they said, look, even if this was constitutional error to introduce this video statement, there was overwhelming evidence of guilt. And we'll find that even if it was error by the trial court, it was harmless. In his federal writ of habeas corpus, Mr. Ervin had brought two claims. This was his direct appeal claim of trial court error, and he had brought a claim of post-conviction error. The district court did not grant a certificate of appealability on the ineffective assistance of counsel claim, but did grant a certificate of appealability on this issue specifically. And so that's before the court today. Mr. Ervin would argue that the Missouri Supreme Court's, I'm sorry, an unreasonable application of Doyle and his progeny, and that it was an unreasonable determination of the facts for several reasons. The hallmark of a Doyle claim is twofold. One is that the prosecution has to use the post-arrest or post-miranda silence against the defendant. And two, that it's called to the attention of the jury. So in this situation, as I had explained earlier, or had stated earlier, clearly the prosecutor used the evidence of his silence, of stopping. Once he realized, 16-year-old Mr. Ervin, once he realized what had happened or what he's being questioned about, he stopped the interview, became silent. That was used both in opening and closing by the state, and it was also called to the attention of the jury, and that it was submitted to the jury to review. I think that the factual determination by the Missouri Court of Appeals that there wasn't any impermissible inference of guilt created by submitting this videotape statement, I think is an unreasonable determination of the facts. I think nothing but. I mean, I think the prosecutor used this statement to show, hey, you know, he's being questioned about the victim. At one point, when he realizes what he's being questioned about, he shuts up, and I think that creates an impermissible inference that he's guilty, that silence was his guilt. But he had already waived his Miranda rights. That's correct, Judge. And then the silence that we're talking about came before he reasserted his rights. That's correct, Judge. That is correct. And I'd also posit that the alternative ruling by the Missouri Court of Appeals, that the evidence was overwhelming, which seems to be quite a popular alternative ruling in this situation, as set out in my brief, there's a number of reasons why I think that's an unreasonable determination of the facts. Again, the victim is 21 months old. The only witness to it was a five- or six-year-old, who actually wasn't a witness to anything and who gave inconsistent statements. There was a lack of physical evidence in the case. So I think that was also an unreasonable determination of the facts based on how they looked at the evidence that actually was presented at trial. If there's no other questions, I'll go ahead and sit down. Very well. Okay. And you can reserve your time for at least a portion of it, right? Yes, Judge, thank you. Thank you. Your crane, is it? Yes. Good morning, sir. You may proceed. May it please the Court. The Missouri Court of Appeals reasonably applied clearly established federal law to a fairly straightforward factual situation. Jonathan Ervin was Mirandized by police, spoke with them voluntarily, and his statements were then admitted at trial, as well as a lot of other evidence to show that he committed the crime and he was convicted. Now, as Judge Shepard mentioned, most of the statements that we're dealing with here were statements and silence that Mr. Ervin made before he invoked his Miranda rights, after he had waived his Miranda rights and voluntarily spoke with police at length. So those statements are clearly allowed to come in under several Supreme Court and U.S. Court of Appeal cases. In Anderson v. Charles, the United States Supreme Court found that Doyle doesn't apply to a suspect who voluntarily speaks with police after waiving his Miranda rights. And in other cases like Salinas v. Texas, the Court found the same thing, that silence, if you are silent in response to police questioning without invoking your Miranda rights, that doesn't invoke them for you. The silence is still admissible, especially if it's probative of guilt. And other U.S. Courts of Appeals have found the same. In U.S. v. Fambro and U.S. v. Goldman, for example, out of the Fifth Circuit and First Circuit, which are cited in our brief. So those cases are dispositive of the first set of statements, and especially under the standards that we're on here. In habeas corpus review, as this Court has pointed out in Colvin v. Taylor, if the Missouri Court of Appeals interpreted federal law the same way that another U.S. Court of Appeals has, then that's very strong evidence that that interpretation was reasonable. So here, the Missouri Court of Appeals on the first set of statements reached the same conclusion as other U.S. Courts of Appeals and as Supreme Court precedent dictates, those statements should have come in. Now, that includes all the way up to when Ervin said, that's what this whole thing is about, remain silent after police clarified that's what it was about. And then there's another statement, I don't want to talk anymore. Now, that statement is obviously not quite the same character as the first statements and the silence. And there isn't clear federal case law on whether a suspect's re-invocation of his Miranda rights after waiving them is admissible under Doyle. And the only case that's very close on this issue is a case that neither party briefed very heavily. It's Fields v. Leepley out of the Eighth Circuit. And that case talked about how in a federal habeas corpus from a state prisoner case, an invocation of silence must be treated as post-Miranda silence and analyzed under Doyle. So, the statement was post-Miranda silence, but the difference here is that it wasn't admitted against him. And that's what the Missouri Court of Appeals rule is really set up to determine. But wasn't it argued against him? I mean, here's the thing. Really, to me, the whole issue is the invocation of your right under Miranda, which we now know is constitutional in nature, using that invocation of your right as evidence of guilt. And in the argument, wasn't that clearly what was asserted by the prosecutor? It wasn't, and the record's pretty clear on this. Although the appellant claimed that the prosecutor mentioned this statement in opening and closing, he didn't mention that statement, though we both agree is the focus of the disagreement here, the argument here. He didn't mention to the jury in opening or closing that the petitioner invoked his right and wanted to end questioning in response. No, but he quoted what he said, which is the invocation. No, he quoted other things. That's what this is about. He quoted that statement, and he quoted petitioner's other voluntary statements made to police. In opening and closing, the prosecutor didn't say, and that's appendix at 31 for the opening and appendix at 523 for the closing, but he didn't mention the fact that petitioner said, I don't want to talk about this anymore. That was never mentioned? Right. And in his direct of the officer, the only further comment on that invocation was, officer, did that conclude your interview with the suspect? And the officer replied, it did, after playing the video. That was the only other mention of the fact that the circumstance had ended. And the Missouri Court of Appeals has recognized that this is a sensitive area of constitutional law, admitting statements like this, but they've crafted a rule that deals with it. And it's a reasonable application of clearly established federal law. And their rule is that if the state, if a defendant agrees to talk with police, the state is entitled to admit evidence that shows how the interview concluded. But the state can't admit that evidence where it would lead to a direct inference of the defendant's guilt. And that's simply not what happened in this case. And the last statements that the defendant made to police were in response to their questions, do you know how the victim got his injuries? Obviously, it's possible that the defendant knew how the victim got his injuries without causing them. And in fact, that was the theme of his entire defense case. Defense counsel got up and the first words out of his mouth and opening statement were, nobody in this case will be able to tell you how the victim got his injuries. And at the end of the evidence, you'll say to yourself, we don't know how the victim got his injuries. That was their entire argument. So clearly the best evidence that this didn't lead to a direct inference of the defendant's guilt is the words out of his lawyer's mouth. That simply knowing or not knowing how the injuries got, how they happened, is not dispositive of the defendant's guilt. He could have known or not known how the injuries happened without having caused them. And that's a reasonable application in an otherwise unclear area of federal law. And simply, that's just what this court requires from the Missouri Court of Appeals. Even if they're incorrect, even if this court would reach a different conclusion on direct appeal, then the Missouri Court of Appeals can still be upheld as long as their interpretation of the federal law question is reasonable. And I think that this court's case law shows that it is reasonable. Now, even in that case I mentioned, Fields v. Leapley, where this court found that... And again, is that in your brief? I don't think it's briefed in either case, but it was part of the district court's dissension. You will send us a 28-J letter? I will. Very well. In that case, this court found that an invocation must be treated as silence, but this court didn't find error in the prosecution playing the interview of the defendant. It found error instead in the prosecutor highlighting and questioning why he didn't say more at the end of his interview. So simply playing the statements without further comment wasn't found to be error in Fields. And in U.S. v. Redearth, which is in our brief, this court, in a slightly similar situation, in that case the defendant wasn't Mirandized, but the court... And that case was what? U.S. v. Redearth, R-E-D-E-R-T-H. Right. Now, this court found that in a slightly different situation because the defendant wasn't Mirandized, but when he ended the interview saying, you know, what do you guys think I should do? Maybe I should get a lawyer. When he entered the interview in a conversation about invoking his rights, this court found no error under Doyle. But even if the Missouri Court of Appeals erred, it's a very high standard for overturning their judgment when they've also concluded that the error was a harmless error under the circumstances. In a review of a habeas corpus case where the state court has already made the harmless error analysis, the standard is even higher, and this court will analyze it under the Kotiakos substantially injurious effect standard, which was announced in Brecht v. Abrahamson that it applied to federal habeas corpus cases. And actually Brecht is very similar to this case. In Brecht, it was also a Doyle case. The Supreme Court considered whether or not the statements were substantially injurious, where the prosecutor had admitted both pre-Miranda and post-Miranda statements against the defendant and commented on them repeatedly throughout the trial. The Supreme Court found that in the face of the other evidence, as well as the fact that some of the statements were properly admitted, that there was no substantially injurious effect on the jury and upheld the state court's decision. Now, this case is similar. The comments that were admitted by the defendant, several of them were unquestionably properly admitted. His statements after being Mirandized, his silence after being Mirandized, before he re-invoked his rights, were properly admitted statements against him. And there was substantial other evidence of his guilt. There was testimony that he was alone with the victim for a period of time, that he was closed in a bedroom with the victim and the victim could be heard crying, that the mother and father had changed the victim's diaper and not seen any injuries shortly before, dropping him off at the house with the defendant, that a witness saw him coming out of a bedroom with the victim's blood running down the victim's leg. The defendant's shirt was off and he told the witness, don't tell anyone about this. The victim had clear injuries of penetrative anal trauma, including breezing, a hematoma and anal fissures. And there was victim's blood found on the carpet of the crime scene and the victim didn't visit there often. So there was substantial evidence of the defendant's guilt. And the other statements that were admitted against him were clearly properly admitted. And if we think about the prejudice in the terms of where the interview tape would stop, it's hard for the defendant to argue that there was any additional prejudice from stopping the tape after he said, that's what this is all about, and was silent for 10 seconds before he said, I don't want to talk anymore. What would be the difference of the jury seeing the entire interview ending that way instead of his statement, I don't want to talk anymore. The fact is the properly admitted statements and the slightly closer question, which I believe was also properly admitted, they're similar enough in character that it makes no difference in the prejudice analysis. So for these reasons, I would urge this court to affirm the district court's judgment and uphold the Missouri Court of Appeals' reasonable interpretation of federal law. Thank you for your argument. Thank you. Thank you. Just quickly, Your Honor, I just wanted to comment on a couple of the cases that the respondent had cited to you. One of them was the United States versus, if I'm pronouncing it correctly, Redearth, 872 Fed Second, 255 8th Circuit, 1989. That case, I believe the respondent did point out that case. It is distinguishable. In that situation, the defendant was interrogated, but he was never advised that he was under arrest at the time or that his right to silence could be used against him. So I don't think factually that case is necessarily applicable. A couple of other Supreme Court cases that the respondent cited to was Anderson versus United States. That's cited in both parties' briefs. Anderson is a case where the defendant had been Mirandized and had been questioned. Later, his statements, his post-Miranda statements, were used at trial to impeach him regarding, I believe, it was a stolen car. In that situation, the defendant did not reassert his Miranda rights. I think that case is distinguishable. Mr. Irvin did, and that's probably the most important issue, is that he did reassert that Miranda right at one point, and that was used by the prosecution at trial. The other case I believe the respondent cited to might have been Salinas versus Texas. That's also cited in the briefs. That's a United States Supreme Court case. I don't think that's really applicable either. Salinas really is a case that talks about how you go about invoking your Fifth Amendment right to silence, and the defendant in that case was not Mirandized either. I think that, again, I think regarding the harmless error standard, I just want to point out on that, the court also has to review that, the application of federal law in that situation, either under the 2254 D.1 or 2250 D.2, whether that's an unreasonable application or contrary to federal law, whether it's an unreasonable determination of fact, whether a harmless error did occur in this case. If there's any further questions, I'll complete my argument. I would ask that the district, unless there's any additional questions. Apparently not. I would ask the court to vacate the district court's judgment, denial of Mr. Irwin's sort of habeas corpus remand for an issuance of the writ. Thank you very much. Very well. Thank you for your argument. The case is now submitted, and we will take it under consideration.